IN THE CIRCUIT COURT OF SAINT CHARLES COUNTY
STATE OF MISSOURI

| | |
|---|---|
| GEORGETTE BULLOCK,<br><br>    Plaintiff,<br><br>v.<br><br>SSM HEALTH CARE ST. LOUIS,<br>    <u>Serve Registered Agent at:</u><br>    CT Corporation System,<br>    120 S. Central Ave.<br>    Clayton, Missouri 63105,<br><br>    Defendant. | **JURY TRIAL DEMANDED**<br><br>Case No.<br><br>Division |

**PETITION FOR DAMAGES**

COMES NOW Plaintiff Georgette Bullock ("Plaintiff"), by and through undersigned counsel, and for her Petition, hereby states to this Honorable Court as follows:

**PARTIES**

1. Plaintiff is a natural person who resides, and at all times relevant herein resided, in the State of Missouri.

2. Defendant SSM Health Care St. Louis ("Defendant") is, and at all times relevant herein was, a non-profit general business incorporated under the laws of and in good standing with the State of Missouri conducting continuous and systematic business in the State of Missouri, from its principal address of 10101 Woodfield Lane, St. Louis, Missouri 63132-2922.

**JURISDICTION AND VENUE**

3. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

4. Defendant is incorporated in the State of Missouri and Plaintiff was domiciled in Missouri for all relevant times herein, giving this Court jurisdiction over all parties.

5. Plaintiff's causes of action arise out of unlawful discriminatory and retaliatory practices that occurred, as alleged herein, in St. Charles County, Missouri, where Plaintiff worked for Defendant at its Wentzville, Missouri location.

6. The acts or omissions that give rise to this cause occurred in St. Charles County, Missouri and Plaintiff was damaged by Defendant in St. Charles County, Missouri, making this the proper venue.

7. On September 14, 2023, the U.S. Equal Employment Opportunity Commission (the "EEOC") issued to Plaintiff a letter indicating the right to bring a civil action against Defendant within ninety (90) days of such notice (the "Notice of Right to Sue").  See Plaintiff's Exhibit 1.

8. This action is hereby commenced within ninety (90) days of the EEOC's issuance of Plaintiff's letter indicating the right to bring a civil action against Defendant within ninety (90) days of such notice.

9. Thus, jurisdiction and venue are proper in St. Charles County, Missouri, pursuant to RSMo. §§ 508.010 and 213.111.1.

**ADMINISTRATIVE PROCEDURES**

10. The allegations contained within all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

11. On or about September 9, 2022, Plaintiff timely filed a Charge of Discrimination (the "Charge") with the Missouri Commission on Human Rights ("MCHR") and EEOC alleging violations by Defendant of the Missouri Human Rights Act, RSMo. § 213.010 *et seq*. (the "MHRA"), and federal anti-discrimination laws.

12. The aforementioned Charge provided the EEOC and MCHR sufficient opportunity of at least 180 days to investigate the full scope of the controversy between Plaintiff and Defendant,

and accordingly, the sweep of this action is within the broad scope that could reasonably be expected to have grown out of the Charge.

13. On or about November 23, 2022, MCHR improperly dismissed Plaintiff's Charge because Defendant misrepresented to MCHR that it was owned or operated by a religious or sectarian group. See Plaintiff's Exhibit 2.

14. Upon information and belief, Defendant routinely makes this same material misrepresentation to MCHR claiming the non-profit hospital is owned by a religious or sectarian group in response to numerous other individuals' Charges, which resulted in their improper and immediate dismissal.

15. On September 14, 2023, the EEOC issued to Plaintiff the Notice of Right to Sue, indicating Plaintiff's right to file a civil action against Defendant related to the allegations contained within the Charge within ninety (90) days of the issuance of such notice. See Exhibit 1.

16. Thus, Plaintiff has satisfied all private, administrative, and judicial prerequisites to the commencement of this action, which is hereby timely filed within all applicable statutes of limitations.

## FACTUAL ALLEGATIONS COMMON TO ALL COUNTS

17. The allegations contained within all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

18. Defendant is a non-profit hospital that operates a behavioral health clinic located at 1603 Wentzville Parkway, Wentzville, Missouri 63385 ("Defendant's Wentzville, Missouri location.").

19. On or about December 14, 2020, Plaintiff became employed by Defendant as a behavioral health therapist at Defendant's Wentzville, Missouri location.

20. Plaintiff's regular job duties for Defendant included providing comprehensive patient assessments and diagnosing and treating mental, emotional, and behavioral developmental disorders.

21. On or about October 25, 2021, Plaintiff notified one or more of Defendant's representatives that she was pregnant.

22. Due to Plaintiff's medical condition and age of 43 years old, Plaintiff's pregnancy was considered "high risk" by her doctors, and she suffered from pregnancy complications, including but not limited to, gestational diabetes (the "disability").

23. Plaintiff was also diagnosed by her doctor with other medical conditions that caused her pregnancy to be considered high risk. For example, Plaintiff had a "thin" cervix and was carrying twins during a pregnancy that was already considered high risk due to her age and disability.

24. Plaintiff's disability was a physical or mental impairment that substantially limited one or more of her major life activities, including but not limited to, walking and standing.

25. Plaintiff's disability did not interfere with her work performance for Defendant with or without reasonable accommodation.

26. On or about January 8, 2022, Plaintiff made a complaint to Defendant's Human Resources representative, Tiffany Coleman ("Coleman") for sex and disability discrimination due to negative treatment she received after disclosing her pregnancy to Defendant.

27. Upon information and belief, Defendant was scheduling more patients to Plaintiff than other similarly-situated employees that were not pregnant and did not have disabilities, and Defendant also refused to comply with pregnancy restrictions from Plaintiff's doctor.

28. Upon information and belief, Defendant accommodated other similarly-situated male employees with their requests for accommodation, including but not limited to, not participating in group therapy sessions if their supervising doctor recommended it, but it would not afford Plaintiff the same accommodation.

29. Plaintiff is unaware of any investigation that Defendant conducted to address her protected complaint for discrimination, to the extent there was any investigation, because she was never informed of any actual investigation by Defendant.

30. After Plaintiff made a protected complaint for discrimination, Defendant began monitoring all of Plaintiff's work activity in far excess to that of the monitoring of other employees. For example, it supervised only Plaintiff on security camera footage, and it combed through Plaintiff's patient files to look for errors for which it could reprimand her.

31. Upon information and belief, Defendant only subjected Plaintiff to this high scrutiny after she made a protected complaint for discrimination.

32. Upon information and belief, Defendant did not subject other similarly-situated non-pregnant and non-disabled employees to the same level of scrutiny regarding their work performance by constantly monitoring their patient files and monitoring them on security cameras.

33. On or about January 9, 2022, Plaintiff's doctor put her on light duty restrictions of limited standing, walking, and not lifting over twenty pounds. Plaintiff's doctor recommended these restrictions due to Plaintiff's disability and high-risk pregnancy.

34. Plaintiff was able to perform her essential job duties within these medical restrictions.

35. This was Plaintiff's first pregnancy immediately following a tragic miscarriage, which is why she was diligent about requesting reasonable accommodations for her current high-risk pregnancy in an effort to avoid another miscarriage.

36. On a date better known by Defendant, Coleman contacted Plaintiff to inform her that Defendant would not accommodate her doctor's light duty pregnancy restrictions, and Coleman did not provide any reason as to why Defendant refused to accommodate Plaintiff.

37. On or about March 10, 2022, due to ongoing complications with Plaintiff's high-risk pregnancy and her disability, Plaintiff informed her supervisor, Kate Boehm ("Boehm") that Plaintiff's doctor would likely be advising that she go on temporary medical leave since Defendant would not accommodate Plaintiff's high-risk pregnancy or disability.

38. On or about March 22, 2022, Plaintiff was informed that she was being "investigated" by Defendant for including preparation time into her group therapy sessions.

39. Plaintiff had been trained to include preparation time into her group therapy sessions by one or more of Defendant's representatives, including but not limited to, her direct supervisor, Brandii Palmisano ("Palmisano").

40. As part of this purported investigation, Plaintiff was also being accused of "copying and pasting" certain notes into patient files.

41. Palmisano had also trained Plaintiff to copy and paste certain portions of patient notes if a patient's condition remained unchanged. Plaintiff was trained to add preparation time and write her notes this way by Palmisano, and she had done so since December 14, 2020, with no issue or reprimand by Defendant.

42. Upon information and belief, Defendant only reprimanded Plaintiff for doing this because she had engaged in protected activities by reporting discrimination and requesting reasonable accommodation for her disability.

43. Upon information and belief, Defendant's other similarly-situated employees built preparation time into their group therapy sessions, without consequence.

44. Upon information and belief, Defendant's other similarly-situated employees copied and pasted certain unchanging patient information into regular notes, as they had also been trained to do, without consequence.

45. On or about March 23, 2022, Plaintiff's doctor placed her on temporary medical leave for her high-risk pregnancy and disability.

46. On or about March 25, 2022, Defendant terminated Plaintiff while she was on medical leave claiming that she had committed "company violations" while she was on medical leave.

47. The allegations Defendant made against Plaintiff to justify terminating her were actually actions for which Boehm had previously given Plaintiff positive performance reviews.

48. After her wrongful termination, Plaintiff filed a Charge against Defendant with the EEOC and MCHR to pursue her rights under the law for her wrongful termination.

49. Upon information and belief, between November 18, 2022, and November 23, 2022, Defendant materially misrepresented to MCHR that it was "owned and operated by a religious or sectarian group," which caused Plaintiff's MCHR charge to be improperly dismissed. *See* Plaintiff's Exh. 2.

50. Notably, Defendant did not make these same material misrepresentations alleging that the hospital is "owned and operated by a religious or sectarian group," and Plaintiff's EEOC charge proceeded through the EEOC administrative process.

51. Upon information and belief, Defendant made its material misrepresentation to MCHR because entities that are actually owned or operated by a religious or sectarian group are exempt from the MHRA, and Plaintiff would not have been able to bring this action against Defendant in state court.

52. As a non-profit entity, Defendant has no "owner" according to Missouri law.

53. Upon information and belief, Defendant was not operated by any religious or sectarian group for any time period relevant during Plaintiff's employment, nor is it currently operated by any such entity.

54. An entity "is not a religious institution simply because it is affiliated with the Jesuits or the Roman Catholic Church." *Saint Louis Univ. v. Masonic Temple Ass'n of St. Louis*, 220 S.W.3d 721, 726 (Mo. 2007). Defendant purports to have historical connections to the Roman Catholic Church, but actual operation shown by "control by a religious creed" is not shown simply by a historical link to a particular religion or by devotion to the ideals of a sect. *Id*.

55. Upon information and belief, as of the date of the filing of Plaintiff's Petition and for all times relevant during Plaintiff's employment with Defendant, Defendant received no operational control from any religious entity which actually altered, controlled, or directed any of Defendant's day-to-day business activities or functions.

56. According to MHRA regulation 8 C.S.R. 60–3.010(9), "A corporation or association must be one hundred percent (100%) owned and operated by a religious or sectarian group and being a member of that religion or sect must be a requirement for employment for that

corporation or association to be exempt as an employer under the MHRA." *Farrow v. Saint Francis Med. Ctr.*, 407 S.W.3d 579, 592 (Mo. 2013) (emphasis added).

57.     As a result, Defendant knew, or reasonably should have known, that when it offered false information to MCHR to improperly dismiss Plaintiff's Charge because it was purportedly owned or operated by a religious entity, it was not actually owned or operated by a religious entity and therefore was not legitimately exempt from MHRA on these grounds.

58.     Upon information and belief, Defendant's actions in misrepresenting its exemption status to the MCHR were done out of malice and with willful disregard to the rights of Plaintiff, and others.

59.     After being wrongfully terminated, Plaintiff applied for unemployment benefits which Defendant did not contest.

60.     If it was true that Plaintiff was terminated for misconduct, as Defendant alleged, it had ample opportunity to contest her application for unemployment benefits by raising any of those points to contest Plaintiff receiving unemployment benefits from the Department of Labor.

61.     Upon information and belief, Defendant did not contest Plaintiff's application for unemployment benefits because it could not point to specific issues or substantiate its complaints of her work performance.

62.     As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered, and continues to suffer, and will in the future suffer irreparable damages, including but not limited to embarrassment, fear, humiliation, stress, and other garden variety emotional distress.

## COUNT I
## DISABILITY DISCRIMINATION
*In Violation of the Americans with Disabilities Act of 1990*

63. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

64. Plaintiff developed a disability of gestational diabetes as a result of her high-risk pregnancy.

65. Plaintiff is, and at all times relevant herein was, "disabled" as contemplated by the Americans with Disabilities Act ("ADA"), as she suffers one or more physical impairments that substantially limit one or more of her major life activities but that did not interfere with her performance of employment with or without reasonable accommodation.

66. As a disabled person, Plaintiff is a member of a class of persons protected by the ADA.

67. Defendant was an "employer" of Plaintiff for all times relevant herein, as defined by the ADA.

68. Plaintiff requested a reasonable accommodation from Defendant for her disability by requesting that it follow her doctor's light duty work restrictions of limited standing, walking, and not lifting over twenty pounds.

69. Plaintiff also requested to be excluded from group therapy sessions as an accommodation for her high-risk pregnancy.

70. Plaintiff could have performed the essential functions of her employment with and without this accommodation.

71. Plaintiff's request for accommodations was reasonable and could have been made by Defendant without incurring significant and/or undue hardship.

72. Defendant denied Plaintiff's request for accommodations without making any reasonable effort to engage in the ADA's interactive process requirement.

73. Defendant terminated Plaintiff's employment rather than accommodate Plaintiff's disability or even engage in the interactive process to do so.

74. Prior to disclosing her disability, Plaintiff engaged in no conduct to give rise to termination, and she was never written up or disciplined prior to termination.

75. Prior to termination, Plaintiff had received positive performance reviews from her supervisor, Boehm.

76. Plaintiff's disability and request for accommodations were motivating factors in Defendant's decision to terminate her employment rather than accommodate her request for a reasonable accommodation.

77. Defendant's reason for termination of Plaintiff is pretextual and not supported by the facts of this matter.

78. Defendant's termination of Plaintiff's employment was an adverse employment action, as defined by the ADA.

79. Plaintiff's disability and/or Defendant's perception thereof, was a motivating factor for Defendant's adverse actions against Plaintiff, including but not limited to its refusal to accommodate Plaintiff's request and/or the termination of Plaintiff's employment.

80. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, and lost other monetary and non-monetary benefits as a result of being terminated by Defendant.

Electronically Filed - ST CHARLES CIRCUIT DIV - October 16, 2023 - 11:49 AM

81. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered – and continues to suffer – garden variety emotional distress and other related compensatory damages.

82. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided by RSMo. § 213.111.2.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against Defendant for damages and attorneys' fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

## COUNT II
## RETALIATION
*In Violation of the Americans with Disabilities Act of 1990*

83. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

84. Plaintiff developed a disability from her high-risk pregnancy, and she also had medical restrictions from her doctor related to her pregnancy.

85. As a result, Plaintiff was "disabled" for all times relevant herein, as defined by the ADA.

86. Defendant was an "employer" of Plaintiff for all times relevant herein, as defined by the MHRA.

87. Defendant was an "employer" of Plaintiff for all times relevant herein, as defined by the ADA.

88. Plaintiff engaged in protected activities when she requested a reasonable accommodation for her disability from Defendant to follow her doctor's medical restrictions for her high-risk pregnancy.

89. On or about January 8, 2023, Plaintiff engaged in protected activities by requesting a reasonable accommodation for her disability and high-risk pregnancy.

90. By making a request for an accommodation for her disability, Plaintiff participated in a protected activity under the MHRA and ADA.

91. Such accommodation was reasonably available for Defendant to provide to Plaintiff without causing Defendant any undue burden or hardship.

92. Rather than accommodating Plaintiff or even engaging in the ADA's required interactive process, Defendant eventually terminated Plaintiff's employment.

93. Upon information and belief, Defendant subjected Plaintiff to a high level of scrutiny regarding her work performance after she engaged in these protected activities.

94. Upon information and belief, Defendant did not subject other employees to this high level of scrutiny for their work performance by constantly watching other employees on security footage cameras or combing through Plaintiff's patient files to search for any error it could use as a reason to reprimand her.

95. Plaintiff worked from December 14, 2020, until she was wrongfully fired on March 25, 2022, with no performance complaints or write-ups using the same practices she was trained by Palmisano to implement during group therapy sessions.

96. Defendant's termination of Plaintiff's employment was an adverse employment action.

97. Prior to engaging in protected activities, Plaintiff engaged in no conduct to give rise to her termination.

98. Prior to Plaintiff engaging in protected activities, Defendant did not subject Plaintiff to a high level of scrutiny regarding her work performance, and it only did this after Plaintiff engaged in protected activities by reporting discrimination and requesting accommodation.

99. Plaintiff engaging in protected activities was a motivating factor for Defendant's adverse actions against Plaintiff, including but not limited to its refusal to accommodate Plaintiff's disability and/or termination of Plaintiff's employment.

100. Out of further retaliation against Plaintiff, Defendant misrepresented to MCHR that it was purportedly "owned and operated" by a religious or sectarian group in an effort to get Plaintiff's Charge improperly dismissed.

101. As a non-profit hospital with no modern-day control from any religious entity, Defendant should have known, or reasonably known, that it was not actually exempt from the MHRA because it is not actually owned or operated by a religious entity.

102. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has been deprived of income, as well as the loss of other monetary and non-monetary benefits.

103. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered – and continues to suffer – garden variety emotional distress and other related damages.

104. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided by RSMo. § 213.010 *et seq*.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against Defendant for damages and attorneys' fees in an amount to be determined at trial

but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

## COUNT III
## PREGNANCY DISCRIMINATION
*In Violation of the Pregnancy Discrimination Act of 1978 (Title VII)*

105. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

106. For all times relevant herein, Defendant was aware that Plaintiff had a high-risk pregnancy toward the end of her employment with Defendant.

107. As a woman with a high-risk pregnancy, Plaintiff was a member of one or more protected classes as defined by the Pregnancy Discrimination Act of 1978 (Title VII) and Title I of the Civil Rights Act of 1991.

108. During her employment, Plaintiff requested accommodations for her high-risk pregnancy, as instructed by her doctor.

109. During her employment, Plaintiff reported pregnancy discrimination and retaliation.

110. Rather than accommodate Plaintiff, Defendant terminated her employment without interacting with her to see if it could provide a reasonable accommodation.

111. Title VII prohibits employers from discharging any individual, or otherwise discriminating against any individual, with respect to their terms, conditions, or privileges of employment because of an individual's protected class.

112. Defendant engaged in unlawful employment practices in violation of Sections 701(k) and 703(a)(1) of Title VII, 42 U.S.C. §§ 2000e(k) and 2000e-2(a)(I), when it refused to accommodate Plaintiff's pregnancy restrictions.

- 15 -

113. The effect of the practices complained of herein has been to deprive Plaintiff of equal employment opportunities because of her high-risk pregnancy.

114. Defendant's unlawful employment practice of terminating Plaintiff was intentional and with total disregard to the rights of Plaintiff, and others.

115. Defendant's unlawful employment practices of terminating Plaintiff were one with malice and/or reckless indifference to Plaintiff's federally protected rights.

116. As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has been deprived of income, as well as the loss of other monetary and non-monetary benefits.

117. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered – and continues to suffer – garden variety emotional distress and other related damages.

118. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided by RSMo. § 213.010 *et seq*.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against Defendant for damages and attorneys' fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

## COUNT IV
## PREGNANCY RETALIATION
*In Violation of the Pregnancy Discrimination Act of 1978 (Title VII)*

119. The allegations contained in all aforementioned Paragraphs are hereby realleged and incorporated as if fully set forth herein.

120. For all times relevant herein, Defendant was aware that Plaintiff had a high-risk pregnancy toward the end of her employment with Defendant.

121. As a woman with a high-risk pregnancy, Plaintiff was a member of one or more protected classes as defined by the Pregnancy Discrimination Act of 1978 (Title VII) and Title I of the Civil Rights Act of 1991.

122. During her employment, Plaintiff requested accommodations for her high-risk pregnancy, as instructed by her doctor.

123. During her employment, Plaintiff reported pregnancy discrimination and retaliation.

124. Rather than accommodate Plaintiff, Defendant terminated her employment without interacting with her to see if it could provide a reasonable accommodation.

125. Title VII prohibits employers from discharging any individual, or otherwise discriminating against any individual, with respect to their terms, conditions, or privileges of employment because of an individual's protected class.

126. Defendant engaged in unlawful employment practices in violation of Title VII when it refused to accommodate Plaintiff's pregnancy restrictions.

127. Defendant engaged in unlawful employment practices in violation of Title VII when it began a fraudulent "investigation" into Plaintiff's entire work performance history after she engaged in protected activities by reporting discrimination and requesting reasonable accommodations.

128. Defendant engaged in unlawful employment practices in violation of Title VII when it terminated Plaintiff for false and pretextual reasons that she was allegedly not properly maintaining business records for Defendant.

129. Plaintiff had been trained by Defendant's supervisor, Palmisano, to maintain business records in the manner for which Defendant ultimately terminated her.

130. Upon information and belief, Defendant subjected Plaintiff to higher scrutiny regarding her work performance only because she reported discrimination and requested reasonable accommodations.

131. Out of further retaliation against Plaintiff, Defendant misrepresented to MCHR that it was purportedly "owned and operated" by a religious or sectarian group in an effort to get Plaintiff's Charge improperly dismissed.

132. As a non-profit hospital with no modern-day control from any religious entity, Defendant should have known, or reasonably known, that it was not actually exempt from the MHRA because it is not actually owned or operated by a religious entity.

133. The effect of the practices complained of herein has been to deprive Plaintiff of equal employment opportunities because of her high-risk pregnancy.

134. Defendant's unlawful employment practice of terminating Plaintiff was intentional and with total disregard to the rights of Plaintiff, and others.

135. Defendant's unlawful employment practices of terminating Plaintiff were done with malice and/or reckless indifference to Plaintiff's federally protected rights.

136. As a direct and proximate result of Defendant's violations of Title VII, Plaintiff has been deprived of income, as well as the loss of other monetary and non-monetary benefits.

137. As a direct and proximate result of Defendant's actions and/or omissions, Plaintiff has suffered – and continues to suffer – garden variety emotional distress and other related damages.

138. Plaintiff is entitled to recover reasonable attorneys' fees from Defendant, as provided by RSMo. § 213.010 *et seq*.

WHEREFORE, for good cause shown, Plaintiff prays this Honorable Court enter a judgment against Defendant for damages and attorneys' fees in an amount to be determined at trial but exceeding Twenty-Five Thousand dollars ($25,000.00), court costs and for any other further relief as the court may deem just and proper.

## **DEMAND FOR JURY TRIAL**

Plaintiff demands a **TRIAL BY JURY** in the Circuit Court of Saint Charles County, Missouri, as to any and all counts and/or allegations alleged in this Petition for Damages.

Dated: October 16, 2023

Respectfully submitted,

**SPARKS LAW FIRM**

By: /s/ Paige Sparks
Paige Sparks, #72143MO
Samantha J. Sparks, #72058MO
2025 Zumbehl Road, #102
St. Charles, MO 63303
Phone: (636) 373-9375
Fax: (314) 451-2567
paige@sparks-legal.com
sam@sparks-legal.com

*COUNSEL FOR PLAINTIFF*